EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO HERNÁNDEZ PÉREZ, acusado y apelante.

Número: CR-66-418     Resuelto: 2 de junio de 1967

*Enrique Miranda Merced, Edna Abruña Rodríguez* y *E. Armstrong de Watlington,* abogados del apelante; *J.B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió ·la opinión del Tribunal.

Ante la Sala de Bayamón del Tribunal Superior se presentó el 12 de septiembre de 1963 una acusación contra el

apelante Antonio Hernández Pérez, cuyo texto, en lo pertinente, es como sigue:

"El Fiscal formula acusación contra ANTONIO HERNÁNDEZ PÉREZ, residente en Calle La Pista Núm. 12, Cataño, P.R., por una infracción al Art. 8 de la Ley de Armas de P.R. Subsiguiente, aprobada el 19 de enero de 1951, según ha sido enmendada 'felony', cometida de la manera siguiente:

El referido acusado ANTONIO HERNÁNDEZ PÉREZ allá para el día 25 de agosto de 1963, y en la Calle La Pista de Cataño, P.R., que forma parte del Tribunal Superior de P.R., Sala de Bayamón, P.R., ilegal, voluntaria y maliciosamente, portaba, conducía y transportaba una pistola cargada, sin tener una licencia al efecto expedida para Portar Armas por el Tribunal Superior de P.R., Sección de Bayamón, P.R., que es la Sección a la cual corresponde el domicilio del acusado en este caso, ni por el Jefe de la Policía de P.R., siendo dicha pistola un arma de fuego con la cual puede causarse grave daño corporal.

Alega además el Fiscal, que Antonio Hernández Pérez, con anterioridad a la fecha en que ocurrió el hecho alegado en esta acusación, había sido declarado convicto del delito de Infracción al Art. 8 de la Ley de Armas de P.R., por sentencia firme de la Corte Superior de Bayamón, del día 2/5/57, por el cual se le impuso la pena de 1 a 2 años de Presidio, en el caso G-56-196, que dejó cumplida."

El 21 de noviembre de 1963, hizo alegación de no culpable, pero aceptó haber sido anteriormente convicto por un delito "de infracción al Art. 8 de la Ley de Armas . . . por sentencia firme . . . del día 2/5/57, por la cual se le impuso la pena de 1 a 2 años de Presidio, . . . que dejó cumplida," tal como se alegaba en la acusación.

Se celebró un juicio ante un jurado que rindió veredicto de culpable, imponiéndosele una pena de 5 a 10 años de presidio.

En apelación sostiene:

"Erró el Tribunal al permitir al Ministerio Público interrogar al acusado sobre su convicción anterior en forma lesiva,

con el supuesto propósito de impugnar su credibilidad y al instruir al jurado sobre el propósito con el cual admitió esa línea de interrogatorio."

La prueba de cargo consistió en las declaraciones del menor José Antonio Cruz Torres e Iris Priscilla Sánchez quienes dijeron haber visto al acusado disparar al aire y en la del policía Ricardo Robles que investigó los hechos el día siguiente.

El acusado apelante declaró en su defensa. Manifestó en síntesis, ser de oficio relojero y técnico de radio; que es casado, tiene tres hijos; que como a las ocho de la noche del 25 de agosto de 1963 estaba en su casa, que es el sitio donde trabaja, que por el sitio donde trabaja se oyen muchas detonaciones, que el sitio Amelia de Cataño "es un sitio malo, peleas a todas horas," que en la mañana del 26 de ese mes de agosto un policía lo fue a buscar y luego, como a las nueve o diez de la mañana fue ante el juez.

Después de declarar el acusado lo que antecede, su interrogatorio directo terminó así:

"P. ¿Usted tiene un arma?

R. No.

P. ¿Utiliza algo que parezca un arma?

R. En mi labor.

P. ¿Qué utiliza?

R. Una pistola eléctrica, para dar soldaduras en plata, que las doy.

P. ¿Qué es esto que le muestro aquí?

R. Una pistola.

P. ¿En algún momento ha tenido, ha trabajado con esto que algún muchacho ha entrado a su casa y lo ha visto?

R. Todo el día; cada vez que 'soldo' un radio la limpio. Eso colorado que tiene es un líquido que le untamos a la plata.

P. ¿Estos es lo único que reconoce como un arma que alguien le haya visto?

R. Sí."

Se observará que al acusado no se le preguntó en el examen directo si alguna vez había disparado armas, ni él lo dijo por su cuenta; ni se refirió a tenencia o portación de armas durante épocas o fechas anteriores.

No obstante, la fiscal empieza su repregunta así: *"Ha dicho* que nunca ha disparado armas?"

De tal pregunta, sin base alguna en el examen directo, se vale la fiscal para enseguida llevar, innecesariamente, sobre la oposición de la defensa, a conocimiento del jurado, con evidente perjuicio para el acusado, el hecho voluntariamente admitido por él diez meses antes al leérsele la acusación, de haber sido "acusado, convicto y sentenciado y cumplido sentencia de uno a dos años de presidio por infracción al artículo ocho de la ley de armas," unos siete años y medio antes.

El incidente ocurre así:

*"Repreguntado Por La* [*sic*]:

Hon. Fiscal:
P. ¿Ha dicho que nunca ha disparado armas?
R. Sí.
P. ¿Nunca ha sido convicto, sentenciado por delito de infracción al artículo ocho de la ley de armas?
Licda. Treviño: Objeción.

Hon. Juez: Que pase el jurado al salón de deliberaciones. La defensa.

Licda. Treviño: Entendemos que este no es el modo de hacer la pregunta al acusado. Entiendo yo que si la fiscal tiene alguna prueba de algún hecho contenido en la pregunta de ella, debe traer la prueba.

Hon. Fiscal: Sometido.

Hon. Juez: ¿Esa es la oposición que se hace?

Licda. Treviño: Entendemos que esa pregunta no es procedente y que esa no es la forma de hacerla.

Hon. Juez: ¿El objeto de la compañera es impugnar la credibilidad?

Hon. Fiscal: Seguro y le estoy preguntando a ver si él lo niega o dice que sí.

Hon. Juez: El artículo 185 de la ley de evidencia le quita la razón a la compañera. Se declara sin lugar esta evidencia. Esta evidencia tiene un propósito limitado, ¿cuál es? de impugnar la credibilidad del testigo únicamente. Llámese al jurado. ¿Aceptan las partes que el jurado es el mismo y que está completo?

Hon. Fiscal: Sí, señor.

Licda. Treviño: Sí, señor.

Hon. Juez: Adelante el ministerio público.

P. ¿A preguntas de la compañera ha dicho que nunca ha tenido un arma ni ha disparado un arma?

Licda. Treviño: Oposición.

Hon. Juez: Deje que termine la pregunta.

P. Yo le pregunto si en alguna ocasión fue convicto, acusado, convicto y sentenciado y cumplido sentencia de uno a dos años de presidio por infracción al artículo ocho de la ley de armas?

Licda. Treviño: Retiro la objeción.

Hon. Juez: Adelante. Conteste.

R. Yo he cumplido inocentemente. Esa pena fui sentenciado inocentemente.

P. ¿Fue sentenciado?

R. Inocentemente.

Hon. Juez: Conteste la pregunta.

P. ¿Estuvo de uno a dos años de presidio?

R. Inocentemente. La juro por mi sagrada madre que está muerta.

Hon. Juez: En relación con esta cuestión la corte le instruye a los caballeros del jurado que esta pregunta se permite únicamente con el limitado propósito de impugnar la credibilidad del testigo. No podrán tomarla en cuenta en ningún otro sentido. Unicamente a esos fines el artículo 158 de la Ley de Evidencia dispone que un testigo podrá ser tachada por la parte contraria, contra quien fuere llamado, mediante evidencia contradictoria, o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables, salvo que podrá probarse me-

diante el examen del testigo, o la anotación de sentencia, que fue convicto de delito grave. Mediante ese artículo el único propósito por el cual se admite esta evidencia es a los fines de impugnar la credibilidad del testigo, no a ningún otro fin. No pueden considerarla a ningún otro fin en este proceso. Adelante.

P. ¿Qué tiempo estuvo en el presidio por eso?

Licda. Treviño: Objeción.

Hon. Juez: Con lugar.

Hon. Fiscal: Eso es todo con el testigo." (T.E. págs. 74–80.)

La fiscal no se ocupa de repreguntar al acusado respecto a los extremos cubiertos por su testimonio. Concentra su contrainterrogatorio en un solo punto, con un solo propósito. Advertir y alertar al jurado de que tienen ante así a un convicto, a un expresidiario, que lo fue, precisamente con motivo de otra infracción al mismo Art. 8 de la Ley de Armas. Hace las preguntas de marras ante el jurado a pesar de la oposición de la defensa y de las advertencias del juez que intervino; las repite al jurado, entonces, envuelta en ingredientes y circunstancias más impresionantes, que tenían que generar un mayor impacto adverso en las respectivas mentes del jurado.

Es cierto que el Art. 158 de nuestra Ley de Evidencia permite que un testigo pueda ser tachado por la parte contra quien fuere llamado mediante evidencia contradictoria o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fue convicto de delito grave. También es cierto que ese artículo no hace excepción alguna respecto a la impugnación de la credibilidad de un testigo en causas por delitos subsiguientes.

Pero en estas causas, al aceptarse previamente la anterior convicción por delito grave, la misma no debe ser llevada ante el jurado, so pretexto de impugnar la veracidad

del testimonio que preste el acusado. Es sólo cuando el acusado niega la anterior convicción, expuesta en la forma que permite la Regla 48 de Procedimiento Criminal (1963), que el jurado debe determinar, con arreglo al segundo párrafo de la Regla 146, si tal alegación sobre convicción anterior es o no cierta. La Regla 68 en su segundo párrafo dispone:

"Cuando la acusación imputare un delito en grado de reincidencia o subsiguiente o delincuencia habitual, el acusado podrá, al momento de hacer alegación, o en cualquier ocasión posterior siempre que fuere antes de leerse la acusación al jurado, admitir la convicción o convicciones anteriores y, en tal caso, no se hará saber al jurado en forma alguna la existencia de dicha convicción o convicciones."

Véanse: *Pueblo* v. *Colón*, 81 D.P.R. 331, 335 (1959); *Pueblo* v. *Aponte González*, 83 D.P.R. 511, 517 (1961).

Mayor cuidado se debe observar en esta situación, si la prueba de cargo tiene serias fallas o lagunas y es susceptible de interpretarse en pro o en contra del acusado. En este caso el arma a que se refiere la acusación no fue ocupada; los hechos ocurren a las ocho de la noche de un 25 de agosto; el menor de 12 años Cruz Torres que dijo haber visto disparar al aire al acusado, en esos momentos se encontraba en la casa de una señora llamada doña Celia; entre la casa del acusado y la de esta señora existen dos casas; este menor unas veces dice que el acusado tenía un revólver y luego dice que tenía una pistola; dijo que así oscuro vio salir al acusado con una pistola de su hogar; cuando se le pregunta si él podía ver desde la casa de doña Celia la del acusado, contestó que *no podría* verla y esto lo repite; (T.E. pág. 31); dijo que al lado de su casa vivía otro señor que tenía un revólver, que era celador de la telefónica y que él conocía los casquillos de balas porque los haba visto al lado de la casa de este celador a quien había visto disparar tiros por allí; que frente a la casa del acusado no hay postes de luz; después niega haber

dicho que vio disparar al acusado al salir de su hogar; dice que los tiros fueron rápidos. (T.E. pág. 39).

La señora Sánchez, sintió, según ella declaró, unos tiros; estaba en ese momento acostada con sus nenes. El acusado, según el niño testigo Cruz Torres, hizo tres disparos rápidos y ninguno más, a los que responden, según él los tres casquillos que entregó al policía Robles. No obstante ello, la señora Sánchez, después de hechos esos disparos, declara que se levanta y ve al acusado que "estaba tirando tiros a lao y lao." En repregunta sobre cuántos disparos oyó antes de levantarse, contesta "Bueno, yo sentí dos y después tres él tiró. Los tres yo *los sentí.*" Después declara que el acusado no tiró más tiros que los primeros tres, que ella sólo sintió. (T.E. pág. 44.) No obstante estar acostada, declaró que vio cuando después de los dos primeros disparos, se le acabaron las balas, y vio cuando en el balcón de su hogar el acusado volvió a cargar el arma y "vuelve a tirar." Y éste es el tercer tiro que ella "sintió" mientras estaba acostada con sus nenes. Entonces dice una cosa que nadie había dicho: que el acusado a las cinco de la mañana siguiente hizo otros tres disparos más. (T.E. pág. 43.) Para estos disparos declaró que poco antes de tales sucesos había tenido un disgusto con la esposa del acusado y que el acusado tuvo con ella "una grande," (T.E. pág. 46) por el uso del agua que la testigo tomaba gratuitamente de una pluma del acusado.

■ Es de suponerse que ante una prueba de cargo tan poco confiable, la revelación al jurado de la convicción anterior por igual delito, que jamás estuvo en controversia, lograda mediante forma impropia pese a la oposición de la defensa, fue un factor subjetivo que influyó adversamente al apelante en la etapa o proceso de la rendición del veredicto. Difícilmente pudo la aclaración del tribunal de instancia desvanecer en la mente del jurado la impresión sicológica que tuvo que ocasionarles esa convicción anterior.

*Es de justicia, a la luz de las concurrentes circunstancias, que se conceda la celebración de un nuevo juicio contra el acusado apelante y así se ordenará.*

El Juez Presidente Señor Negrón Fernández no intervino.