El Pueblo de Puerto Rico, demandante y apelado, *v.* Luis A. Ortiz Vázquez, acusado y apelante.

*Número:* CR-67-53          *Resuelto:* 30 de diciembre de 1969

*Ángel Viera Martínez,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Lolita Miranda, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto por un jurado del delito de contra natura y sentenciado a cumplir de 5 a 10 años de presidio.

En este recurso señala la comisión de ocho errores. Antes de discutirlos haremos un resumen de la prueba.

La de cargo tendió a demostrar que para el día 31 de mayo de 1966, el menor J.R.M. de 15 años de edad, se encontraba recluido en el Hospital Universitario padeciendo de diabetes. Para esa fecha el apelante prestaba servicios en ese hospital como médico residente.

Como a las once de la noche del indicado día 31 de mayo el menor J.R.M. se dirigió en pijamas a un cuarto de baño para orinar. Al terminar de hacerlo el apelante penetró en ese cuarto de baño y le ofreció al menor un peso para que éste realizara cierto acto lascivo con su boca. Rehusó el menor y al éste tratar de salir del cuarto de baño el apelante cerró la puerta, lo agarró, lo tiró al piso y luego de descorrerse el zipper de su pantalón, de bajarle la pijama al menor y mientras le tapaba la boca, realizó un acto carnal contra natura usando al menor como agente pasivo. Una vez que hubo terminado el menor salió corriendo y llorando

según su testimonio y mientras se dirigía a su habitación pasó frente a la enfermera Ada Nelly de Oquendo, triste y cabizbajo, según declaró esta enfermera. Al verlo en esa actitud, que no era lo normal del niño, ella le preguntó qué le pasaba contestándole que nada le pasaba. Esta enfermera le pidió a la señora Carrillo, otra enfermera que estaba más en contacto con los pacientes, que le preguntara al niño lo que le había sucedido, pero la señora Carrillo tampoco tuvo éxito. Al día siguiente volvió ésta a preguntarle y entonces el niño le dijo lo que le había sucedido con el doctor, aquí apelante. Dos días después de los hechos el niño le dijo a la enfermera, señora de Oquendo, lo que le había sucedido y ella a su vez fue a informarlo a su superiora.

Posteriormente tres doctores la interrogaron a ella y al niño y éste les relató lo que le había sucedido con el apelante.

Nos referiremos más adelante a otros detalles de la prueba de cargo cuando discutamos los errores señalados.

La defensa utilizó como único testigo al Juez de Distrito, Hon. Ramón A. Fortis, quien en la vista preliminar determinó causa probable para acusar al apelante. Su testimonio se limitó a establecer que durante la celebración de la vista preliminar hubo conflicto en cuanto a una fecha sin que recuerde qué fecha era.

Se señala como primer error la negativa del tribunal a ordenar que el menor fuera sometido a un examen psiquiátrico habiendo base para ello en el récord.

Del récord surge que mientras declaraba como testigo de cargo el menor era renuente a contestar algunas preguntas, se tardó en contestar otras e incurría en vacilaciones, que había que hacerle algunas preguntas sugestivas y a veces el juez tenía que conminar al testigo para que contestara. El juez resolvió que la actitud del testigo no era extraña dada su condición diabética y la naturaleza de los hechos sobre los cuales estaba declarando. La lectura de la trans-

cripción de su testimonio no establece base para considerar que el testigo padecía de sus facultades mentales. Forma parte del cuadro que presenta el testimonio de este testigo, la naturaleza y forma de las preguntas que hacía la defensa, muchas de ellas muy extensas y otras confusas, al extremo de que a veces el propio magistrado no las entendía.

■ La ley presume que el estado normal es el de la cordura. Ni del testimonio del testigo ni de alguna otra prueba surgió duda razonable sobre su cordura, y por tanto, no erró el magistrado al negarse a ordenar un examen psiquiátrico del testigo.

En el segundo señalamiento se ataca la actuación del magistrado que presidía la sala sentenciadora al llevar al conocimiento del jurado un hecho sobre el cual no se había practicado prueba.

■ Mientras el menor perjudicado era contrainterrogado, uno de los abogados del acusado manifestó al tribunal, en presencia del jurado, que creía que el testigo debía ser examinado para ver si en ese momento estaba en estado de *shock*. El tribunal decretó un receso y en ausencia del jurado el testigo sufrió un síncope en la silla testifical. Fue enviado a un dispensario para que recibiera atención médica. El médico que lo atendió informó al magistrado por teléfono que el menor sufrió un ataque de histeria, no de diabetes y que le recomendaba que el testigo no continuara declarando en ese día y que le permitiera descansar hasta el otro día cuando estaría en condiciones de hacerlo.

Al reanudarse la sesión el magistrado transmitió al jurado esa información como razón para decretar un receso hasta el día siguiente. En vista de que el fiscal y la defensa preferían no alterar el orden de la prueba y esperar hasta que el testigo pudiera seguir declarando, se decretó el receso.

Al día siguiente la defensa solicitó la disolución del jurado por el fundamento de que la información trasmitida

por el magistrado a dicho cuerpo, perjudicaba sus derechos ya que según alega, la información sobre el ataque de histeria sufrido por el testigo podía ser una razonable explicación de su conducta mientras deponía y por tanto beneficiar su credibilidad. No nos parece razonable el aserto de que un testigo que sufre un ataque de histeria mientras declara pueda merecer mayor veracidad que un testigo normal. Por otro lado fue la defensa la que al dirigirse al magistrado solicitando se examinara al testigo, lo que llevó al conocimiento del jurado que el testigo sufría un *shock*, según su creencia.

Considerando el récord en su totalidad, opinamos que de haberse incurrido en el error señalado, el mismo no justifica la revocación de la sentencia.

Con motivo de otro incidente la defensa solicitó también sin éxito, la disolución del jurado. La defensa confrontaba al menor con una declaración jurada que había prestado ante el fiscal y le pedía que explicara por qué en la declaración jurada había dicho que después de ocurrir los hechos, había hablado con el apelante mientras en su testimonio en corte declaró lo contrario. El testigo explicó que se equivocaría porque el apelante lo había "amenazado más primero".

La defensa, el fiscal y el juez le pidieron al testigo, en una serie de preguntas que explicara lo que él quería decir con "más primero". Fue entonces que intervino un jurado:

"Sr. Bird

P.—Para ayudarte a contestar esa pregunta. Cuando dijiste 'más primero', querías decir antes de tú hablar con el fiscal fue que te amenazó? Eso fue lo que tú quisiste decir?

R.—Sí."

A base de esta pregunta la defensa concluye que el señor jurado había llegado a una conclusión en cuanto a uno de los hechos por lo que el acusado no habría de tener el beneficio de un juicio imparcial.

Se trata de una de las tantas preguntas sugestivas hechas al testigo. El juez ordenó su eliminación y manifestó que instruiría al jurado en el sentido de que en forma alguna tomaran en cuenta la pregunta del jurado como una conclusión sino sencillamente como una pregunta hecha en forma sutil. A requerimiento de la defensa el magistrado no informó al jurado sobre su solicitud para que se disolviera el jurado. El juez le manifestó además al abogado defensor que podía solicitar una instrucción especial en el momento oportuno con relación a la pregunta hecha por el jurado. No lo hizo así la defensa a pesar de que el juez solicitó de las partes instrucciones especiales.

Ese incidente no privó al apelante de un juicio imparcial, según alega, y por lo tanto el error señalado no fue cometido.

Sostiene además el apelante que no tuvo un juicio imparcial y justo porque el testimonio del menor perjudicado no fue espontáneo. Baste decir que algunas de las llamadas preguntas sugestivas hechas por el fiscal en el interrogatorio directo no fueron objetadas y en las que hubo objeción, ésta era improcedente.

■ En el quinto error se señala que el testimonio de la enfermera, Sra. Ada Nelly Rivera de Oquendo contiene prueba de referencia perjudicial al apelante. No fue cometido.

Esta testigo no declaró lo que el menor le había relatado. Las objeciones a que una pregunta era sugestiva y que la contestación a otra no era responsiva así como a que la testigo declarara sobre lo que había pasado ni sobre lo que le había sucedido al menor, fueron resueltas a favor del apelante.

■ Por el sexto error se atacan las instrucciones al jurado. Convenimos con el Procurador General en que las mismas son suficientes y correctas.

". . . . El juez instructor instruyó al jurado sobre el elemento esencial del delito imputado; bajo qué circunstancias pueden ser acusados tanto el agente activo como el agente pasivo al cometerse el delito imputado y por lo tanto convertirse en co-autores (cómplices). Indicó, además, bajo qué circunstancias uno de estos agentes no es un cómplice del acto y por lo tanto su testimonio no tendría que ser corroborado; cuándo es que podría considerarse cómplice, y de serlo, qué prueba exigiría la Ley, además del testimonio de ese cómplice, para corroborar su testimonio; que ellos (el jurado) tenían que resolver y determinar como una cuestión de hecho si el testigo perjudicado era mayor o menor de 18 años. Expresó el juez de instancia que la prueba que tuvo ante su consideración el jurado fue en el sentido de que el perjudicado tenía 15 años de edad e inmediatamente les instruyó de nuevo, que ellos (el jurado) determinarían por la apreciación de la declaración del testigo, si él era menor o mayor de 18 años.

El juez instructor en ningún momento invadió la función del jurado de determinar la edad del perjudicado. Lo que hizo el juez fue resumir la única prueba que tuvo ante sí el juzgador de los hechos sobre la edad del perjudicado. Al apelante le correspondía traer prueba en contrario para rebatir este hecho. No lo hizo. El hecho de la edad del perjudicado no estaba en disputa.

Los abogados de defensa estuvieron satisfechos con las instrucciones transmitidas ya que no las objetaron, no solicitaron que se enmendaran ni que se transmitieran instrucciones adicionales.

El apelante en su alegato, llega a la conclusión de que los alegados hechos se llevaron a cabo con el consentimiento del perjudicado. Fundamenta su determinación en varias conclusiones suyas. El jurado, evidentemente, no llegó a esas mismas conclusiones y es a éste a quien competía apreciar la prueba y dirimir cualquier posible conflicto en la misma." (Informe del Procurador, págs. 15 y 16.)

■ Tampoco erró el tribunal sentenciador al no dar instrucciones sobre tentativa de contra natura. Aparte de que el apelante no objetó las instrucciones transmitidas ni solicitó una instrucción sobre el delito de contra natura en

grado de tentativa, *Pueblo* v. *Rodríguez Correa,* 88 D.P.R. 653 (1963), la prueba no la justificaba. *Pueblo* v. *Domenech Meléndez,* res. en 20 de noviembre de 1969.

Finalmente la sentencia no constituye un castigo cruel e inusitado ni carece de suficiente margen de fluctuación, por lo que no se cometió el octavo y último error señalado.

*Se confirmará la sentencia apelada.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Santana Becerra, no intervinieron.