El Pueblo de Puerto Rico, demandante y apelado, *v.*
Enrique Elías Villuendas, acusado y apelante.

*Número:* CR-73-11      *Resuelto:* 4 de mayo de 1973

*Nora L. Rodríguez,* abogada del apelante; *J. F. Rodríguez Rivera,*
*Procurador General Interino,* y *Peter Ortiz, Procurador*
*General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El fiscal imputó al apelante la comisión del
delito de Tentativa de Escalamiento en Primer Grado, en
grado subsiguiente consistente en que ". . . intentó penetrar
durante las horas de la noche en la casa residencia de la
señora Santa Polanco viuda de Pagán con la intención allí
y entonces de cometer hurto o ratería siendo sorprendido en
el momento en que lo intentaba." Se alegó como subsiguiente,
que el mismo acusado fue convicto y sentenciado por el Tri-
bunal Superior de Puerto Rico, Sala de Mayagüez el día 31
de mayo de 1967 por los delitos de Infracción al Art. 8 de la
Ley de Armas de Puerto Rico e Infracción al Art. 438 del
Código Penal de Puerto Rico a cumplir de Uno a Tres años de
Presidio con trabajos forzados en la causas G-47-144 y G-67-
145 respectivamente, sentencias de las que no apeló el acusado,
cumplió las mismas y son firmes.

Antes del juicio el acusado aceptó las alegaciones sobre subsiguientes, por lo que las mismas fueron eliminadas de la acusación que tuvo ante sí el jurado.

Luego de desfilar la prueba de cargo y de defensa el jurado rindió un veredicto de culpabilidad por el delito imputado. Se le impuso una pena correspondiente al delito en grado subsiguiente.

En este recurso señala como único error la negativa del juez sentenciador a declarar con lugar "la solicitud de *mistrial* presentada por la defensa cuando ya se habían afectado en forma adversa los derechos del acusado llevando al Jurado el conocimiento de las convicciones anteriores."

Debemos señalar que el apelante no ataca la suficiencia de la prueba. La de cargo demostró que la Sra. Antonia Diodonet residía en la Calle Cantera 306 de Mayagüez. En la noche del día 10 de noviembre de 1970, a eso de las doce menos cuarto, ella estaba en su habitación tejiendo, esperando que su esposo llegara. Sintió trasteando en el callejón, llamó a su esposo y como no lo vio se levantó, abrió la ventana y miró. Vio un hombre en el callejón, en el patio de doña Santa Polanco. Preguntó quien era y al notar que no era su esposo comenzó a gritar. A los cinco minutos llegó la policía, la persona brincó y corrió en dirección hacia la calle y desapareció en una casa blanca. Dijo al policía que esa persona tenía un sombrero y una camisa blanca y estaba sin los zapatos pues cuando enganchó la pierna ella le vio la pierna descalza. La persona esa era de estatura mediana y no era muy gordo.

El policía Santiago Seda Aponte a quien la señora Diodonet explicó lo que había pasado y luego de señalarle el lugar hacia donde el individuo en cuestión había corrido procedió a su búsqueda, sorprendiendo al acusado debajo de una casa blanca que queda al cruzar la calle haciendo esquina con la calle donde reside la señora Diodonet. El acusado estaba poniéndose un zapato, le ordenó que saliera y trató de esquivarlo. Lo sacó y le dijo que estaba arrestado. El acusado

vestía camisa blanca, un pantalón y zapatos negros. Tenía puesto un solo zapato, el otro lo recogió el policía al lado del acusado.

La señora Santa Polanco viuda de Pagán residía, para el 10 de noviembre de 1970, fecha en que ocurrieron los hechos, en la calle Cantera 304 de Mayagüez. Ese día ella no durmió en su casa pues había salido desde el día anterior y había dejado su casa bien cerrada. Regresó al otro día cuando le avisaron que habían forzado una ventana. Encontró los boquetes donde habían forzado la ventana Miami.

El acusado apelante presentó una defensa de coartada. Su prueba, a la que evidentemente el jurado no dio crédito, fue al efecto de que ese día él se encontraba hasta las once de la noche en casa de la señora María Luisa Vélez; que de allí se dirigió en dirección a Broadway, para hablar con el padre Nicolás Luna quien le había ofrecido una Biblia y que cuando iba llegando al puente de la carretera, se estacionó frente a él un policía quien lo metió en un Jeep y lo condujo al Cuartel de la Policía. En su testimonio admitió que usaba camisa blanca y medias blancas porque es una promesa que tiene.

Al terminar el desfile de la prueba el apelante solicitó que se disolviera el jurado alegando que la pregunta que le hizo el fiscal en la silla testifical sobre si había sido convicto anteriormente, lesionó sus derechos. Su solicitud fue denegada.

Mientras el acusado apelante era contrainterrogado por el fiscal, ocurrió lo siguiente:

"Fiscal: Y cuando el policía Seda se sentó a declarar y dijo que lo sacó de debajo de la casa, ¿también está diciendo mentira?

Testigo: No, señor, porque yo no me meto debajo de la casa. No me dedico a robar, porque yo no tengo expediente por pillo.

¿No tiene expediente?

No, señor. No me dedico a robar.

¿A que se dedicaba a trabajar aquí?

Y aquí yo trabajaba con Américo Marín y Moisés Maíz.

¿ Usted nunca ha sido convicto?

¿ Convicto? Me dieron de uno a tres años por una portación de armas.

¿ Lo que dijo el policía Seda, que lo encontraron allí debajo. ¿ No es cierto?

No, señor.

¿ Y lo que él dijo, que lo sacó a la una de la madrugada, tampoco es cierto?

No, señor. Yo pasaba por el puente cuando él me echó mano a mí."

El apelante no objetó la pregunta del fiscal sobre convicción anterior, no solicitó la eliminación de la contestación a la misma ni solicitó del juez que transmitiera instrucciones especiales al jurado para salvaguardar sus derechos. Para sostener su señalamiento de error invoca la Regla 68 de Procedimiento Criminal y los casos de *Pueblo* v. *Hernández Pérez*, 94 D.P.R. 616 (1967) y *Cabrera Ramírez* v. *Jefe Penitenciaría*, 88 D.P.R. 547 (1963).

Resolvemos que el error no fue cometido. Fue el propio apelante, quien en una contestación no responsiva a una pregunta del fiscal, trajo a colación en la prueba la cuestión de sus expedientes criminales anteriores. Una vez el acusado declaró que no tenía expediente por pillo, el fiscal podía investigar, por medio de preguntas si eso era cierto o no. Por lo tanto no concebimos como la pregunta sobre si nunca había sido convicto haya perjudicado sus derechos sustanciales. Posteriormente cuando el acusado declaró que le dieron de uno a tres años por una portación de armas, el fiscal pudo insistir en si esa era la única convicción ya que la verdad era que también había sido convicto de comprar, a sabiendas, propiedad hurtada.

Por otro lado el acusado trató de llevar al jurado la impresión de que él era un hombre religioso que se dedicaba a trabajar. De ahí su prueba al efecto de que trataba de conseguir una Biblia y de que había hecho promesa de vestir camisas y medias blancas. Con sus preguntas el fiscal trataba

además de destruir esa impresión. Véase *Pueblo v. Rivera García*, Cr-68-17, Sentencia del 28 de enero de 1969.

*Por las razones expuestas se confirmará la sentencia apelada.*