*751 TEXTO COMPLETO DE LA SENTENCIA
Francisco Ríos Bacó, mediante veredicto emitido por un jurado, fue hallado culpable de dos cargos por el delito de Robo, Artículo 173 del Código Penal, 33 L.P.R.A. see. 4279, e infracción a los Artículos 6 y 8 de la anterior Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, según enmendada, 25 L.P.R.A. sees. 416 Y 418. 
Luego de examinar cuidadosamente las transcripciones de la prueba y los alegatos de las partes, a la luz del derecho aplicable, resolvemos que la evidencia desfilada en el juicio y creída por el jurado fue suficiente en derecho para sostener las convicciones decretadas.
I
La prueba aquilatada y creída por el jurado confirmó la teoría de los hechos expuesta por el Estado. Esta reveló que en la noche del 3 de junio de 1997, Ernesto Jiménez y su esposa Gisela Blondet de Jiménez fueron víctimas de un robo en el estacionamiento del Condominio San Mateo Plaza en Santurce a manos del apelante, quien actuó en común acuerdo con otra persona. Como producto del robo fueron despojados de sus carteras, dinero en efectivo, efectos personales y tarjetas de crédito.
La prueba aportada por el Ministerio Público revela que luego de cometido el robo los asaltantes huyeron del lugar en un automóvil pequeño, color oscuro con tablilla BWO803. El agente, Miguel A. Guadalupe Parrilla, obtuvo del informe de la querella el número de tablilla del vehículo. Con dicha información obtuvo el nombre y la dirección de la propietaria del vehículo, quien resultó ser la señora Zaida L. Ríos Bacó, madre del apelante.
De acuerdo al testimonio de los testigos, éstos describieron a uno de los asaltantes como una persona joven, alto, delgado, pelo corto y de tez blanca. Al otro asaltante lo describieron de igual manera, pero más bajito de estatura que el primero.
Con la información anterior, el agente Guadalupe se personó a la dirección que informaba el sistema. La persona que lo atendió coincidía con la descripción de uno de los asaltantes, siendo éste el apelante. Así, el agente Guadalupe citó al apelante a una rueda identificación.
Celebrada la rueda de identificación, el apelante fue identificado por Gisela Blondet de Jiménez, Ernesto Jiménez Montes y Roberto Cando como una de las personas que cometió el robo.
Luego de que el jurado escuchó la prueba y sometido el caso por las partes, el apelante fue encontrado *752 culpable en todos los delitos imputados. Una vez declarado convicto, el tribunal de instancia le impuso veintinueve (29) años de reclusión penitenciaria. Dicha pena fue impuesta sin el beneficio de una sentencia suspendida.
El señor Ríos Bacó señala en su recurso la comisión de cinco (5) errores a saber: (1) no concederle el beneficio de la duda razonable; (2) denegarle una solicitud de descubrimiento de prueba en cuanto a prueba en poder del Estado; (3) no decretar un “mistrial”; (4) aceptar como válida la identificación del apelante la cual era insuficiente en derecho; y (5) no conceder el beneficio de cumplir su sentencia bajo el régimen de sentencia suspendida.
II
Examinemos con cuidado los señalamientos de error invocados por el apelante. Discutiremos en primer término su señalamiento de error número (4) cuatro. En el mismo, expone la médula de su defensa: que la identificación realizada antes y durante el procedimiento de rueda de identificación no es confiable y es contrario a lo establecido por la ley y la jurisprudencia.
Como hemos expresado, el apelante plantea que la identificación realizada no fue confiable. Arguye que la oportunidad que tuvieron los testigos de observar a su asaltante fue uno exageradamente corto, que el grado de atención de los testigos durante el incidente fue menos que confiable, que la oportunidad de observar al asaltante fue de apenas dos o tres minutos, las descripciones dadas fueron, a su juicio, muy genéricas, vagas e imprecisas. Que la rueda de confrontación estuvo viciada, pues los testigos estaban advertidos que el sospechoso se encontraba en ella. Que los rasgos físicos de los integrantes de la rueda eran disímiles. A base de los anterior, sostiene que de acuerdo a la totalidad de las circunstancias concurrentes, la identificación no fue confiable.
La norma prevaleciente para evaluar la confiabilidad de una identificación es conjugar la totalidad de las circunstancias. Pueblo v. Mattei Torres, 121 D.P.R. 600 (1988); Pueblo v. Rodríguez Maysonet, 119 D.P.R. 302 (1987); Pueblo v. Rey Marrero, 109 D.P.R. 739 (1980); Pueblo v. Gómez Incera, 97 D.P.R. 249 (1969). Una identificación maculada con alguna sugestividad, per se, no es inadmisible, ni vicia la identificación positiva habida en el acto del juicio, si está fundada en el conocimiento previo y recuerdo de la identidad del acusado por la víctima u otros testigos. Pueblo v. Mattei Torres, supra.
Bajo este enfoque, los elementos de confiabilidad a considerar son: (1) oportunidad que tuvo el testigo de observar al ofensor al momento del crimen; (2) grado de atención; (3) corrección de la descripción; (4) nivel de certeza en la descripción; y (5) tiempo transcurrido entre el crimen y la confrontación. Pueblo v. Rey Marrero, supra.
La presencia de sugestividad no excluye irremisiblemente la prueba, sino que impone al jurado o al juez, constituido en tribunal de derecho, la labor de separar campos en el testimonio para determinar su confiabilidad y la existencia de prueba de identificación no influida ni maculada por conducta sugestiva. Pueblo v. Peterson Pietersz, 107 D.P.R. 172 (1978). En nuestro sistema de adjudicación, la conclusión del “juzgador de hechos” sobre este punto tiene todo el respeto y validez que en apelación se extiende a las determinaciones de hechos. Pueblo v. Rodríguez Román, 128 D.P.R. 121 (1991).
En el trasfondo fáctico y procesal del caso de autos, la identificación del apelante Ríos Bacó puede dividirse en dos etapas separadas. De igual modo, sus efectos jurídicos.
La primera etapa se desarrolla en el momento de los hechos. El perjudicado Ernesto Jiménez Montes declaró durante el juicio que vio por primera vez al apelante como a una distancia de ocho pies de distancia con el arma de fuego en la mano apuntándole con ella. (Transcripción de evidencia, páginas 11 a la 14). Indicó que el apelante estuvo “al frente mío un poco a la izquierda”. Manifestó haber mirado, aunque el apelante le indicó que no lo *753 mirara. (Transcripción de evidencia, página 15). Testificó que durante el asalto el apelante le tocó el cuello y cogió su cartera. El apelante en ese momento, según el testimonio del señor Jiménez Montes, “estaba pegado, pegado” de él. Según su percepción, como a una distancia de “un pie, dos pies, pues “si tiene acceso a meterme la mano en el bolsillo, está cerca”. (Transcripción de evidencia, página 17). Además, indicó que la iluminación en el lugar era muy buena. (Transcripción de evidencia, página 18).
Declaró que el asalto duró como unos dos o tres minutos. (Transcripción de evidencia, página 27). Además, identificó en sala al apelante como el autor de los hechos. Manifestó no tener la más mínima duda al respecto. En palabras textuales expresó: “Estoy muy claro”. (Transcripción de evidencia, página 31).
El testigo Roberto Cancio declaró que al momento del asalto se encontraba en compañía de la telereportera, Silvia Gómez. Testificó que vio al apelante y a su acompañante cuando salieron por el portón eléctrico del Condominio. Describe al apelante como un muchacho de cinco diez de estatura, blanco, y llevaba en ese momento una gorra. (Transcripción de evidencia, página 84). Según el testigo, declaró que le prestó mayor atención al apelante por llevar el arma de fuego. El apelante salió primero e hizo un gesto con el arma apuntándole a él y a su compañera, Sylvia Gómez. Pudo observar al apelante y a su acompañante por espacio de unos diez a quince segundos. (Transcripción de evidencia, a la página 83 al 84).
Expresó durante su testimonio, que luego del asalto vio a ambos asaltantes cuando abordaron un vehículo que estaba estacionado en la calle San Mateo, el cual siguieron en su automóvil. Como el lugar de los hechos está bien iluminado, pudo mantener un buen contacto visual sobre el auto. Declaró que al seguir en su automóvil los asaltantes, éstos bajaron por la calle San Jorge hasta llegar a la Avenida Fernández Juncos. En todo momento su compañera, Silvia Gómez, estuvo dando información a la policía. Los siguieron de vehículo a vehículo, como a una distancia de separación de unos diez a doce pies. Durante el episodio verificó el número de la tablilla del vehículo en que huían los asaltantes, que resultó ser la BWO803. Estos manejaban un auto color oscuro, pequeño, con el número de tablilla antes indicada. Perdieron contacto con el vehículo por una de las calles aledañas a la Ave. Fernández Juncos. Volvió a identificar al apelante en sala como una de las personas que realizó el asalto. (Transcripción de evidencia, páginas 85-90). Dicho testimonio fue corroborado con las declaraciones de la señora Sylvia Gómez. (Transcripción de evidencia, página 161).
Dentro de ese marco de hechos, la identificación realizada no puede tacharse de ilegal y menos poco confiable. Los testigos pudieron observar al apelante en un sitio totalmente iluminado, demostraron tener buen grado de atención, ser fidedignos, y tener buen nivel de certeza en la descripción del apelante. Además, el tiempo entre su observación y su confrontación fue razonablemente corto. Estamos convencidos que los testigos tuvieron amplia oportunidad de observar al apelante para luego poder identificarlo sin temor alguno. En esas circunstancias, la identificación hecha se conforma fielmente al análisis de los elementos de confiabilidad expuestos en Pueblo v. Peterson Pietersz, supra.
La segunda identificación fue realizada mediante rueda de identificación. El testigo, señor Jiménez Montes, expresó que el día de la rueda de identificación le informaron que había un individuo que se lo iban a presentar a través de un cristal junto con otras personas. Su esposa, también fue citada a comparecer a la rueda de identificación. Según declaró el señor Jiménez Montes, tan pronto vio a los individuos a través del cristal, “no tardó dos segundos en identificarlo [al apelante] porque esa cara no se me olvidará nunca”. (Transcripción de evidencia, página 27). Enfasis nuestro.
Por otro lado, el señor Roberto Cancio expresó que el día de la rueda de identificación entró primero el señor Jiménez Montes, luego su esposa y por último él. La Policía hizo la rueda de identificación con cinco personas entre los cuales identificó varias veces sin vacilación al apelante. Volvió nuevamente a identificarlo en sala como la persona que vio en el “line up” con el número 3 y que cometió el asalto. (Transcripción de evidencia, página 92-93). Dichas circunstancias sugieren que la identificación hecha por rueda de identificación fue confiable y no *754 hay indicios de que estuviera matizada de sugestividad, considerando la identificación habida previamente de carácter independiente y ajena al control de la Policía.
Resolvemos, al conjugar la totalidad de las circunstancias, que la identificación realizada fue confiable. El jurado que aquilató la prueba de identificación contra el apelante, así también determinó la confiabilidad de la identificación realizada. Al igual que lo ha hecho este foro, el jurado realizó una evaluación integral de todas las circunstancias presentes en el caso. En esa función separaron cualquier factor que pudiera indicar sugestividad, lo midieron a base de la habilidad de los tres testigos para percibir y comunicar lo ocurrido, todo ello para excluir la posibilidad de error. De tal forma, establecieron que la identificación llevada a cabo mediante rueda de confrontación fue confiable.
Evaluado los autos, concluimos que la prueba sobre identificación no estuvo matizada, en parte alguna, por violación al debido proceso de ley. Por lo que el jurado no cometió el error imputado por el apelante. La prueba de identificación no fue viciada por sugestión y es digna de la credibilidad y confiabilidad que los juzgadores de hechos le otorgaron.
III
Retrocedamos ahora en el recurso para examinar el primer señalamiento de error. En el mismo, el apelante señala que el jurado debió concederle el beneficio de la duda razonable, en vista de la totalidad de la prueba presentada. Plantea, en esencia, una cuestión de credibilidad y no una de suficiencia de prueba. Este acepta y argumenta que la prueba fue suficiente. Sus argumentos van dirigidos a intentar establecer que la misma, como cuestión de derecho, no es satisfactoria para sustentar un fallo de culpabilidad. De tal modo, imputa que el jurado descartó elementos de prueba fundamentales en el proceso que los llevó a la conclusión de que el apelante es culpable de los delitos imputados. El apelante señala, al impugnar la veracidad de los testigos del Ministerio Fiscal, que surgió la existencia de duda razonable, por lo que se le debió absolver en todos los cargos imputados.
Es principio fundamental de nuestro ordenamiento jurídico que la culpabilidad de una persona que ha sido acusada de delito sea demostrada con suficiente prueba y más allá de toda duda razonable. Dicho principio es consustancial con la presunción de inocencia y constituye uno de los imperativos del debido proceso de ley. Pueblo v. De León Martinez, 132 D.P.R. 746 (1993). Para cumplir con el requisito constitucional de demostrar la culpabilidad de un imputado de delito más allá de toda duda razonable, se requiere que la prueba presentada sobre cada uno de los elementos que configuran el delito imputado sea suficiente en derecho. Esto no quiere decir que toda duda posible tenga que ser destruida y que la culpabilidad del acusado tenga que establecerse con certeza matemática. Pueblo v. Pagán, Ortiz, 130 D.P.R. 470 (1992; Pueblo v. Bigio Pastrana, 116 D.P.R. 748 (1985). Basta con que la evidencia presentada, produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. González Román, 138 D.P.R. 691 (1995); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986); Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R. 545 (1974).
La duda razonable es aquella duda fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso; no puede ser una duda especulativa o imaginaria. Pueblo v. Bigio Pastrana, supra. En fin, la existencia de alguna insatisfacción en la conciencia del juzgador con la totalidad de la prueba es lo que se conoce como duda razonable y fundamentada que produce la absolución del acusado. Pueblo v. Somarriba García, 131 D.P.R. 462 (1992). Sin embargo, para que se justifique la absolución, la duda debe ser el resultado de la consideración serena, justa e imparcial de la totalidad de la evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación. Pueblo v. Irizarry Irizarry, 2002 T.T.S. 68, resuelto el 10 de mayo de 2002.
La determinación que ha hecho el juzgador de los hechos a nivel de instancia, a los efectos de que la culpabilidad del imputado de delito ha quedado establecida más allá de duda razonable, es revisable en apelación como cuestión de derecho. Pueblo v. Cabán Torres, supra; Pueblo v. Carrasquillo Carrasquillo, supra. Ello es así, porque la apreciación de prueba es un asunto combinado de hechos y de derecho, toda vez que su análisis *755 pone en movimiento, no sólo la experiencia del juzgador, sino también su conocimiento del derecho para darle a la controversia una solución justa. Pueblo v. Carrasquillo Carrasquillo, supra.
En repetidas ocasiones, el Tribunal Supremo de Puerto Rico ha expresado que los juzgadores de hechos merecen respecto y confiabilidad en la apreciación imparcial de la prueba. De ordinario, no se intervendrá con el fallo inculpatorio, en ausencia de indicios de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Pueblo v. Somarriba García, supra; Pueblo v. Cruz Negrón, 104 D.P.R. 881 (1976); Pueblo v. Cabán Torres, supra. Unicamente, ante la presencia de estos elementos y/o cuando la apreciación de la prueba no concuerde con la realidad fáctica o ésta sea inherentemente imposible o increíble, se puede intervenir con la apreciación efectuada. Pueblo v. Acevedo Estrada, 2000 J.T.S. 22, resuelto el 19 de enero de 2000.
Una lectura integral de la transcripción de la prueba en este caso, nos lleva a concluir que la evidencia presentada por el Ministerio Público fue digna de crédito por el jurado que entendió en el caso. Esa prueba fue indudablemente suficiente en derecho para establecer la culpabilidad del apelante más allá de duda razonable. Entendemos que la prueba presentada versa sobre todos y cada uno de los elementos exigidos por nuestro ordenamiento jurídico para configurar los delitos de Robo e Infracción a los Artículos 6 y 8 de la Ley de Armas, supra.
Reiteradamente, el Tribunal Supremo ha expresado que aun cuando haya partes de un testimonio que no sean aceptables o el testigo incurra en contradicciones en cuanto a detalles, no implica que debe ser descartado automáticamente. Pueblo v. Pagan, Ortiz, supra. En ese momento, lo que se pone en juego es su credibilidad y es al juzgador de los hechos a quien le corresponde resolver el valor que le impartirá a dicho testimonio. Pueblo v. Cabán Torres, supra; Pueblo v. Cruz Negrón, supra.
Luego de dirimir credibilidad y aquilatar la evidencia desfilada y admitida en juicio, el jurado encontró culpable al apelante. Coincidimos con el Procurador General en que no hay razón alguna para intervenir con la determinación del jurado. La prueba refleja que el apelante fue positivamente identificado por los perjudicados como uno de los autores del robo. El arma utilizada fue descrita adecuadamente. Dos testigos, además de los perjudicados, vieron al apelante con su acompañante en el área de los hechos luego de cometido el robo, los siguieron y anotaron el número de la tablilla del automóvil en que emprendieron la huida. Con el número de tablilla, fue que el agente investigador pudo llegar a la residencia del apelante. Según la prueba, éste se ajustaba a la descripción que dieron los testigos del asaltante. Luego, el apelante fue positivamente identificado por tres testigos mediante el procedimiento de rueda de identificación. Evaluadas todas las circunstancias que concurren en este caso, a la luz del derecho aplicable, concluimos que el error señalado no fue cometido.
Recordemos que el jurado estaba en mejor posición que este foro apelativo para aquilatar la prueba testifical porque observó la manera en que los testigos se comportaron y cómo se expresaron en la silla testifical. Pueblo v. Chévere Heredia, 139 D.P.R. 1 (1995); Pueblo v. Cabán Torres, supra.
El apelante no ha demostrado que el juzgador de los hechos haya cometido error al dirimir la prueba que le fue presentada, ni que actuó movido por pasión, prejuicio o parcialidad. Un examen detenido y cuidadoso de la transcripción de la prueba, nos convence que la apreciación del juzgador no es ajena a la realidad de los hechos.
La prueba demostró más allá de duda razonable la comisión de los delitos por el apelante. En tales circunstancias, concluimos que la evaluación y apreciación de la prueba que realizara el jurado fue correcta. En vista de lo anterior, este foro apelativo no intervendrá con tal adjudicación de credibilidad. Pueblo v. Pagán, Ortiz, supra.
IV
En su segundo señalamiento de error, el apelante plantea que el tribunal de instancia debió ordenarle al *756 Ministerio Público producir prueba en cuanto al uso que se le dio a las tarjetas de crédito robadas la noche de los hechos. Argumenta que dicha prueba era necesaria para su defensa, ya que de serle favorable, podría mediante la presentación de prueba caligráfica demostrar que no las utilizó, ni que está relacionado con estos hechos.
En esencia, el apelante alega tener derecho a obtener del Ministerio Público dicha información por alegadamente constituir prueba exculpatoria. Basa su contención en un argumento altamente especulativo. Esto es, que de haberse realizado la investigación sobre el uso de las tarjetas de crédito robadas y de surgir que no aparece utilizándolas, pudo haber establecido mediante prueba pericial que no tenía nada que ver con estos hechos y, por ende, crear una duda razonable en la mente de los jurados.
Está establecido que el descubrimiento de pmeba que rebasa el texto de la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y busca apoyo en el debido proceso de ley, no es recurso a invocarse livianamente ni es patente de corso que en forma indiscriminada permite la intrusión en los archivos de fiscalía o que facilite el acusado cuanta evidencia pueda relacionarse con su caso. Pueblo v. Rodríguez Sánchez, 109 D.P.R. 243 (1979). Por imperativo del debido proceso de ley, el Ministerio Público tiene el deber de revelar a la defensa cualquier evidencia exculpatoria, testimonio peijuro o indicios de falsedad en la prueba que tenga en su poder. Pueblo v. Arocho Soto, 137 D.P.R. 762 (1994).
Sin embargo, el descubrimiento de prueba bajo la Regla 95 de Procedimiento Criminal, supra, está limitada a aquella información pertinente a la materia objeto de la acusación y evita las expediciones de pesca en los archivos del Ministerio Público. Pueblo v. Romero Rodríguez, 112 D.P.R. 437 (1982).
El acusado que solicita información debe demostrar de forma convincente la materialidad de esa evidencia y la legitimidad de su petición que la excluyan de la calificación de alegación simplemente delatoría, onerosa y hostigante. Pueblo v. Rodríguez Sánchez, supra.
Descansa en la sana discreción del tribunal expedir orden al Ministerio Público para que produzca la evidencia solicitada. Pueblo v. Dones Arroyo, 106 D.P.R. 303 (1977). Al decidir ordenar descubrir prueba, el tribunal debe establecer un justo balance entre los derechos del acusado y los intereses del Estado considerando que la información solicitada se descubra con especificación y sea pertinente a la defensa.
No hay duda que la defensa tiene derecho a examinar toda evidencia pertinente al caso, y también aquella evidencia de naturaleza exculpatoria en poder del fiscal. Para ello se requiere que haga alguna demostración afirmativa de la existencia de esa prueba. No puede basar su petición en una mera especulación o una conjetura. Así lo sostuvo el Tribunal Supremo en Pueblo v. Rodríguez Sánchez, supra. El acusado no tiene derecho a realizar una expedición de pesca en los archivos de fiscalía. Dentro de ese contexto debe ser cauteloso para evitar lanzar injustamente imputaciones de ocultación de prueba que no tiene base racional alguna. A base de las anteriores consideraciones, no habiéndose realizado por el apelante una demostración convincente de materialidad de la evidencia solicitada, resolvemos que este error tampoco fue cometido.
y
En su tercer señalamiento de error, el apelante imputa que el foro de instancia incidió al no decretar una “mistrair. El apelante trae a la atención de este foro apelativo que durante el juicio y el contrainterrogatorio realizado al agente Guadalupe, éste declaró que el apelante “tenía otro caso”. Aduce que por tal motivo, se debió disolver el jurado. 
Examinada la transcripción de evidencia y particularmente el testimonio del agente Guadalupe, vemos que el comentario de que el acusado “tenía otro caso” fue uno aislado, no substanciado, no se aludió a convicción alguna ni se explicó la naturaleza del supuesto caso. El comentario, por sí sólo, no es motivo suficiente para anular el veredicto del jurado. Pueblo v. Elías Villuendas, 101 D.P.R. 323 (1973); Pueblo v. Quiñones Ramos, 99 *757 D.P.R. 1 (1970); Pueblo v. López Camacho, 98 D.P.R. 700 (1970); Pueblo v. Ortiz Vázquez, 98 D.P.R. 171 (1969).
Toda persona acusada de la comisión de un delito público tiene el derecho absoluto a un juicio justo e imparcial. Esto significa que el acusado tiene derecho a que el juicio se desarrolle en una atmósfera de calma judicial ante un juez imparcial y un jurado libre de prejuicios. La responsabilidad de hacer valer este derecho necesariamente descansa en la decisión del juez que preside los procedimientos. Este debe actuar con la mayor cautela, a fin de evitar que por cualquier motivo, se anule el derecho del acusado a un juicio justo e imparcial.
Sin embargo, la mera posibilidad de que un acusado haya podido sufrir perjuicio a consecuencia de la conducta o del lenguaje utilizado por un testigo, no es suficiente para considerar que se le violó el derecho a un juicio justo e imparcial o para anular un veredicto condenatorio. Máxime cuando el apelante no ha demostrado que sufriera un daño positivo o que se hayan perjudicado sus derechos sustanciales. Pueblo v. Calderón Rodríguez, 97 D.P.R. 261 (1969).
El criterio para determinar si los comentarios hechos han privado o no al acusado de su derecho a un juicio justo e imparcial, es determinar si, de no haberse cometido el error, probablemente el resultado hubiera sido distinto. Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991); Pueblo v. Mendoza Lozada, 120 D.P.R. 815 (1988); Pueblo v. Mangual Hernández, 111 D.P.R. 136 (1981).
Consideradas todas las circunstancias de este caso, sopesando el valor probatorio del comentario contra el valor probatorio de la demás prueba aportada por el Ministerio Público, forzoso es concluir que el mero comentario no substanciado hecho por el agente Guadalupe, de que el apelante “tenía otro casó", no fue un factor decisivo o sustancial en el veredicto rendido por el jurado. Menos aún cuando el tribunal de instancia actuó correctamente al intervenir oportunamente impartiéndole instmcciones adecuadas al jurado para evitar cualquier concebible perjuicio al acusado y salvaguardar su derecho a un juicio justo e imparcial. Pueblo v. Robles González, 125 D.P.R. 750 (1990).
VI
El último señalamiento de error, resulta ser totalmente inmeritorio. El apelante aduce que hubo error al denegarle los beneficios de una sentencia suspendida. Fundamenta en este señalamiento de error en que por ser menor de veintiún (21) años de edad al momento de la comisión de los hechos y dadas las circunstancias en que se desarrolló el delito por el cual resultó convicto, los cuales no refieren el uso de violencia física ni la comisión de otros delitos, tiene derecho a disfrutar del beneficio de una sentencia suspendida.
La Ley de Sentencias Suspendidas, 34 L.P.R.A. see. 1027, dispone en lo pertinente lo siguiente:

“El Tribunal de Primera Instancia podrá suspender los efectos de la sentencia que se hubiere dictado en todo caso de delito grave que no fuera asesinato, robo, ... o cuando la persona utilice o intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa . .

Por otro lado y cónsono con lo antes expuesto, la see. 1042 de dicha ley dispone lo siguiente:

“Se autoriza a los Jueces del Tribunal de Primera Instancia de Puerto Rico para que en el ejercicio de su discreción concedan sentencias suspendidas en todo caso por delito grave, excepto asesinato en primer grado, cuando se utilice o intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa, o por infracción a lo dispuesto en la sección 2411(a) del Título 24, y en todo caso de delito menos grave que surja de hechos envueltos en el delito mayor que no fuese de los excluidos de los beneficios de esa sección, incluyendo el caso en que la persona haya sido declarada no culpable del delito grave, pero culpable de hechos envueltos en el mismo y constitutivos del delito menos grave, si el convicto fuere menor de 21 años de edad a la fecha de la 
*758
comisión del delito

Surge claramente de las anteriores disposiciones legales, si la persona utilizó o intentó utilizar un arma de fuego en la comisión de un delito grave o su tentativa, se ha restringido a los jueces considerar el derecho a sentencias suspendidas aun a un menor de veintiún (21) años de edad.
En el caso de epígrafe, el apelante fue convicto del delito de robo. De acuerdo a la prueba presentada ante el tribunal y la cual fue creída por el jurado, éste utilizó un arma de fuego para cometer el delito de robo. Por lo tanto, aplicando las transcritas disposiciones de ley, concluimos que no tiene derecho a los beneficios de una sentencia suspendida. Ante lo expuesto, concluimos que el error imputado por el apelante, de que hubo abuso de discreción al denegarle este beneficio, tampoco fue cometido.
En mérito de lo antes expuesto, se confirman las sentencias apeladas.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 20
1. Esta ley fue derogada por la Ley Núm. 404 del 11 de septiembre de 2000, mejor conocida como la “Ley de Armas del 2000”. 25 L.P.R.A. see. 455, et seq.
2. Por los delitos de robo le impuso doce (12) años a ser cumplidos en forma consecutiva entre sí, para un total de veinticuatro (24) años. Por la infracción a los Artículos 8 y 6 de la Ley de Armas, supra, se le impuso penas de cinco (5) años y cuatro (4) años respectivamente, éstos a cumplirse en forma concurrente entre sí y a su vez en forma consecutiva con las anteriormente impuestas, para un total veintinueve (29) años.
3. El incidente que motivó este señalamiento de error se encuentra en la página 222 de la transcripción de juicio. El asunto surge a preguntas del abogado defensor.

“P. Oiga, ¿se acuerda del día de la vista preliminar?

R. Correcto.

P. Nárrele a las damas y caballeros del jurado qué pasó ese día, por favor.

R. Pues, ese día, como yo tengo por costumbre, llego al piso seis y voy al tablero donde están to, los señalamientos de todas las vistas en todas las salas. Y, pues, verificando me tocó, creo que es la seis cero ocho, pues él tenía otro caso, Digo revisando y llego... ”.