EL PUEBLO DE PUERTO RICO, apelado, *v.* JORGE LUIS
MANGUAL HERNÁNDEZ, acusado y apelante.

*Número:* CR-79-34 *Resuelto:* 8 de junio de 1981

*Rafael Pérez Abreu,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Una madrugada de febrero de 1978, Juan Bautista Rivera Quijano fue hallado muerto. Recibió once puñaladas y tres balazos.

Ese mismo día, por la mañana, Miguel Ocasio Rosa detuvo frente a su casa en un barrio de Camuy al señor

Pedro Deida y le mostró un revólver viejo, mohoso, de los que se "escocotan" por arriba. Convino en entregárselo a Deida para que éste lo vendiera a un tercero. En lugar de hacerlo así, Deida lo entregó a la policía. Miguel Ocasio Rosa fue arrestado. El revólver pertenecía a Rivera Quijano, el occiso.

Ocasio Rosa de inmediato involucró a tres personas en el asesinato, mas no al aquí apelante, Jorge Luis Mangual Hernández.

En el curso de la investigación otra persona, de nombre Teodoro Abrahams Jiménez, confesó ser el autor del asesinato e involucró, a su vez, al mencionado Miguel Ocasio Rosa y al primo de éste José Raúl Acevedo Rosa. Este último no fue uno de los involucrados originalmente por Ocasio Rosa. Tampoco se implicó en el asesinato al aquí apelante, Jorge Luis Mangual Hernández.

A base de esta confesión, se inició el enjuiciamiento de Miguel Ocasio Rosa, de su primo José Raúl Acevedo Rosa y del propio Teodoro Abrahams Jiménez.

Preso ya en el campamento penal del Barrio Sabana Hoyos de Arecibo, Miguel Ocasio Rosa logró comunicarse con un fiscal. Le informó que había mentido, pero que quería decir la verdad sobre lo ocurrido. En la nueva versión implicó a Teodoro Abrahams Jiménez, quien ya había confesado. Por primera vez señaló como coautores a Diego Arocho Jiménez, Miguel Lugo Cruz y al aquí apelante, Jorge Luis Mangual Hernández.

El Pueblo inexplicablemente le otorgó inmunidad a Ocasio Rosa en éste y en otro caso —también de asesinato— que pendían en su contra. En consecuencia, Diego Arocho Jiménez y Miguel Lugo, a quienes se procesó separadamente del aquí apelante, fueron enjuiciados y encontrados culpables por el asesinato de Rivera Quijano. Teodoro Abrahams Jiménez no pudo ser procesado debido a que se tornó incapaz mental.

El apelante fue enjuiciado posteriormente como adulto,

por haber renunciado a su jurisdicción la Sala de Asuntos de Menores del Tribunal Superior. Tenía diecisiete años para la fecha en que se cometió el delito.

Hubo un primer juicio en su contra, pero el jurado fue disuelto por no haber podido rendir veredicto. En el segundo juicio el jurado lo declaró culpable de asesinato en primer grado. Apeló. En su alegato apunta catorce errores. Consideraremos tres, dos de los cuales conllevan la revocación de la sentencia. El tercero apuntala esta conclusión. Veamos.

Plantea el apelante que el tribunal sentenciador incidió al permitir, por inadvertencia, que el jurado tuviera ante sí en el salón de deliberaciones, copias de las sentencias que el tribunal dictó en el primer juicio contra el apelante por infracciones a los Arts. 4 y 6 de la Ley de Armas.

La única prueba que presentó el apelante ante el tribunal de instancia para sustanciar su posición fue un acta de hechos levantada por el notario Luciano Sánchez Martínez el día en que éste y el abogado defensor fueron a examinar en Secretaría el expediente del caso para ver si dichas sentencias pasaron a manos del jurado en la etapa deliberativa. Ante el notario manifestó el secretario de sala que ambas sentencias pasaron a la consideración del jurado.

No empece lo anterior, la defensa no llamó al secretario de sala a testificar. El juez denegó el planteamiento y el acta de hechos quedó sometida como prueba ofrecida, pero no admitida en evidencia.

Tal y como surge de la exposición narrativa de la prueba, la exclusión de dicha acta notarial estuvo predicada en lo siguiente:

> El tribunal le indicó al abogado defensor que él no tenía ninguna autoridad en derecho para levantar un acta notarial sin la autorización del Juez Administrador del tribunal, sin la notificación al fiscal y al secretario, y por estas razones el tribunal declaró, posteriormente, sin lugar la petición de la defensa de que dicho documento fuera admitido en evidencia.

Dicho fundamento es erróneo. Primero, porque los expedientes de causas criminales son documentos públicos sujetos al escrutinio de cualquier ciudadano interesado. La única limitación que puede oponerse a ese derecho es la relativa a la hora, lugar y espacio en que puede realizarse el examen, y a que dicho examen se haga bajo la supervisión de un funcionario del tribunal. *Prensa Insular de P.R.* v. *Cordero, Auditor*, 67 D.P.R. 89, 104 (1947). Quedan excluidos de inspección, por supuesto, los expedientes de menores y otros expedientes, documentos u objetos que por disposición expresa de alguna ley especial, regla procesal u orden del tribunal, deban permanecer fuera del escrutinio público.

En segundo lugar, es norma vigente que el Estado, actuando, bien sea a través de un tribunal o de un fiscal, "no podría impedir que el abogado de la defensa tenga acceso, con el fin de entrevistarlo, hasta un testigo de cargo". *Hoyos Gómez* v. *Tribunal Superior*, 90 D.P.R. 201, 205 (1964). Mucho menos podría impedir que entrevistara a un empleado, funcionario del tribunal, que es un testigo, por así decirlo, "neutral", respecto al modo en que actuó en el desempeño de sus deberes como tal. Si el testigo, aunque sea empleado del tribunal, está en disposición de hacer manifestaciones al abogado de la defensa y la información que se le pide no es confidencial ni privilegiada, el abogado defensor no viene obligado a obtener previamente el permiso o autorización del Juez Administrador ni de ningún otro juez.

Nada hay de impropio que se haga constar en un acta pública el estado de un expediente judicial que no es secreto. Además, no vemos cómo ese hecho pudo afectar en el caso de autos los intereses de El Pueblo o la eficiente administración de la justicia.

En cuanto a la falta de notificación del acta notarial con anterioridad a su ofrecimiento como evidencia, basta señalar que en el enjuiciamiento criminal no se

requiere al acusado descubrir prueba que no sea anunciar el nombre de sus testigos en las ocasiones en que invoque las defensas de coartada o locura.

A todo lo anterior debemos añadir que una vez se ha alertado al tribunal sobre la posible infracción, aunque sea por inadvertencia o negligencia, del deber del secretario de sala de hacerle llegar al jurado solamente aquellos documentos u objetos admitidos en evidencia y referidos por el tribunal, corresponde a éste iniciar una pesquisa e interrogar al respecto al propio funcionario del tribunal. En *Pueblo* v. *Pabón*, 102 D.P.R. 436, 440 (1974), consignamos que el juez que preside una vista no solamente podía sino que debía ser "un participante activo en la búsqueda de la justicia, siempre que no vulnere la imparcialidad que su alto cargo reclama" y que "[p]uede el juzgador en consecuencia requerir la declaración de determinados testigos . . .". Ver además *Geders* v. *United States*, 425 U.S. 80 (1976).

El acta notarial era prueba prima facie, no de la veracidad del contenido de la manifestación del secretario, como lo tenemos resuelto, *Colón* v. *Shell Co. P.R.*, 55 D.P.R. 592, 624 (1939),[1] sino de que dicho funcionario hizo una manifestación en ese sentido. Correspondía al juez sentenciador entonces inquirir del propio secretario de sala, si lo expresado en dicha acta notarial era cierto.

En caso de que el funcionario rechazara la contención de que él hubiera hecho la manifestación que se le atribuía, correspondía al tribunal aquilatar ese testi-

---

[1] En *Colón* dejamos establecido que "en las escrituras donde el notario da fe de las manifestaciones que ante él hacen otorgantes y testigos, el notario no acredita ni tiene facultad para acreditar la exactitud de tales manifestaciones. Sólo acredita, y en cuanto a esto su certificación hace prueba plena, que los otorgantes y testigos hicieron ante él las manifestaciones que pueden ser falsas o verdaderas y las cuales obligan y constituyen prueba solamente entre las partes que las hicieron". Por tanto, la aludida acta de hechos no probaba que las sentencias pasaron a manos del jurado.

monio a la luz de lo consignado en el acta notarial. Regla 63 de Evidencia.

▮ De haberse entregado al jurado las referidas copias de las sentencias sobre convicciones previas del apelante ello constituiría error que ameritaba la concesión de un nuevo juicio. *Pueblo* v. *Álvarez Rosario*, 108 D.P.R. 112 (1978). A no ser por el resultado final a que llegamos en el caso de autos, la deficiencia planteada por el presente señalamiento de error sería suficiente para devolver el caso al tribunal sentenciador para que se determinara el hecho en controversia y se resolviera de conformidad.

Otro de los apuntamientos es de tal magnitud que también acarrea la revocación de la sentencia y la celebración de un nuevo juicio. Nos explicamos:

Teodoro Abrahams Jiménez, como antes dijimos, suscribió una declaración jurada ante un fiscal en la que admitió su participación en la comisión del delito, sin mencionar al apelante como uno de los participantes en el crimen. Al momento del juicio Abrahams no estaba disponible para declarar como testigo por razón de su incapacidad mental. El tribunal de instancia sostuvo que su declaración jurada prestada ante el fiscal no era admisible en evidencia.

▮ De conformidad con las doctrinas modernas de derecho probatorio y de nuestras Reglas de Evidencia de 1979, la referida declaración era admisible en evidencia. Bajo la Regla 64(A)(4)[2] se considera que una persona no está disponible como testigo cuando está imposibilitada de

---

[2] Dispone la Regla 64(A)(4):

"(A) Definición. 'No disponible como testigo' incluye situaciones en que el declarante:

(1) . . . . . . . .

(2) . . . . . . . .

(3) . . . . . . . .

(4) ha fallecido o está imposibilitado de comparecer a declarar por razón de enfermedad o impedimento mental o físico, o. . . ."

144

declarar por razón de enfermedad o impedimento mental o físico. Bajo la Regla 64(B)(3) (³) es admisible en evidencia la declaración de una persona no disponible como testigo que al momento de ser hecha la someta a riesgo de responsabilidad criminal. Así, pues, la declaración de Abrahams, que constituía una confesión de haber cometido un delito, resultaba admisible bajo la referida regla por ser una declaración contra el interés de un declarante que no estaba disponible para comparecer como testigo por razón de su incapacidad mental.

 Podría argüirse que como los hechos en este caso ocurrieron antes de la vigencia de las Reglas de Evidencia de 1979, la Regla 64(B)(3) no es de aplicación a este caso y el asunto debe resolverse a la luz de la Ley de Evidencia derogada. Tal contención no convence, pues es el acusado quien tiene algún derecho a reclamar que no se le apliquen retroactivamente reglas de evidencia que menoscaben sus derechos constitucionales o que lo sitúen en una situación inferior a la que estaría bajo el vigente ordenamiento. Considerando la situación bajo la derogada Ley de Evidencia, si bien es cierto que desde el punto de vista más riguroso y técnico la declaración sería prueba de referencia inadmisible en virtud de la concepción restrictiva de la admisibilidad de declaración contra el interés, nada hubiera impedido que este Tribunal, siguiendo la doctrina moderna sobre el asunto, hubiera adoptado la norma de admisibilidad de declaración contra el interés penal. *United States* v. *Toney*, 599 F.2d 787 (6th Cir. 1979);

---

(³) Dispone la Regla 64(B)(3):

(1) . . . . . . . .

(2) . . . . . . . .

(3) Declaraciones contra interés: Una declaración que al momento de ser hecha era tan contraria al interés pecuniario o propietario del declarante o le sometía al riesgo de responsabilidad civil o criminal, o tendía de tal modo a desvirtuar una reclamación suya contra otro, o creaba tal riesgo de convertirlo en objeto de odio, ridículo o desgracia social en la comunidad, que un hombre razonable en su situación no hubiera hecho la declaración a menos que la creyera cierta."

*Withan* v. *Mabry,* 596 F.2d 293 (8th Cir. 1979); *United States* v. *Goins,* 593 F.2d 88 (8th Cir. 1979); *United States* v. *Love,* 592 F.2d 1022 (8th Cir. 1979); *United States* v. *Lang,* 589 F.2d 92 (2d Cir. 1978); *United States* v. *Atkins,* 618 F.2d 366 (5th Cir. 1980); *United States* v. *Garris,* 616 F.2d 626 (2d Cir. 1980); *United States* v. *Metz,* 608 F.2d 147 (5th Cir. 1979); *United States* v. *Cambindo Valencia,* 609 F.2d 603 (2d Cir. 1979). El criterio para determinar si un error en materia de evidencia acarrea revocación es determinar si, de no haberse cometido el error, probablemente el resultado hubiera sido distinto.[4] No hay duda de que si hubiese admitido la declaración de Abrahams, el resultado probablemente hubiera sido distinto.

El apelante se queja además de que el juez de instancia se negó a dar la instrucción que aparece en la página 96 del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico y en su lugar lo instruyó en los siguientes términos:

> ... El acusado en este caso ha ofrecido evidencia tendiente a demostrar que no estaba presente en el sitio y el momento en que se cometió el alegado delito. Esto es, lo que se conoce en derecho como prueba de coartada. El único testimonio que tienen ustedes bajo su consideración para determinar que el acusado no estaba en el sitio donde se alega que cometieron los hechos, es el testimonio del señor acusado en la silla de los testigos. El deber de ustedes es evaluar dicho testimonio conjuntamente con la demás prueba y darle el peso y el valor probatorio que a ustedes les merezca. Si después de considerada la prueba presentada en este caso ustedes tienen duda razonable de si el acusado estaba presente en el sitio de los sucesos en el momento en que alegadamente el delito se cometió, es vuestro deber darle el beneficio de esa duda y rendir un veredicto de no culpable.

La anterior instrucción, si bien informa al jurado que

---

[4] Sobre el efecto de exclusión errónea de evidencia, véase la Regla 5 de las Reglas de Evidencia de 1979 y *Pueblo* v. *Franceschini Sáez,* 110 D.P.R. 794 (1981).

"si tienen duda razonable de si el acusado estaba presente en el sitio de los sucesos en el momento en que alegadamente el delito se cometió, es vuestro deber darle el beneficio de esa duda y rendir un veredicto de no culpable" es más restrictiva que la propuesta en el Libro de Instrucciones al Jurado, [5] teniendo como consecuencia una falta de uniformidad que puede resultar injusta para algunos acusados. Ciertamente resulta más beneficiosa la propuesta en el Libro de Instrucciones al Jurado.

Ya en *Pueblo v. Velázquez Caraballo*, 110 D.P.R. 369 (1980), habíamos dicho que es buena práctica que las instrucciones al jurado se ajusten a las instrucciones que contiene el citado manual.

Si bien es cierto que cuando aprobamos el Libro de Instrucciones expusimos que su utilización no era mandatoria, [6] con ello no quisimos decir que no hay un interés eminente de este Tribunal en lograr el menor grado de error posible en las instrucciones que se transmitan al jurado, al mismo tiempo que se logra la mayor uniformidad en la administración de la justicia criminal: que todos los acusados sean tratados iguales.

Una de las cosas que quisimos evitar al aprobar este manual, fue precisamente la que hoy se suscita: que los acusados estén planteando contínuamente error en la instrucción impartida.

Reiteramos que la mejor práctica de los tribunales de instancia debe ser la de basar sus instrucciones en las del citado manual, a menos que existan otras circunstancias que justifiquen apartarse de ellas. El haberse apartado del manual no constituye de por sí motivo de revocación,

---

[5] La propuesta por el Tribunal Supremo en dicho libro lee así: "La prueba de coartada no tiene que establecer, fuera de duda razonable que era imposible que el acusado hubiere cometido el delito. La coartada no tiene que probarse más allá de duda razonable. Sólo constituye prueba que tiende a establecer que el acusado no cometió el delito o a crear una duda en la mente del jurado con respecto a su culpabilidad."

[6] Resolución de 7 de mayo de 1976.

pero cuando se le considera conjuntamente con los otros señalamientos la sentencia recurrida no puede prevalecer.

*Por las razones anteriormente expuestas se revocará la sentencia apelada y se devolverá el caso para nuevo juicio.*

El Juez Asociado Señor Díaz Cruz es del criterio que con abstracción del valor individual de revocación de los señalamientos de error, considera que su efecto en conjunto lesionó la integridad básica del proceso. El Juez Asociado Señor Negrón García concurre en el resultado.