# 2007 DTA 100

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN Y HUMACAO**
**PANEL V**

XAVIER GONZÁLEZ SIMOUNET, SU ESPOSA LETICIA MELÉNDEZ, Y
LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Querellantes-Recurridos

v.

ESTANCIAS REALES, S.E.
Querellados-Recurrentes

DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR Y EL HON. SECRETARIO DEL DEPARTAMENTO, HON. ALEJANDRO GARCÍA PADILLA

Agencia-Recurrida

Núm. KLRA-2007-00707

San Juan, Puerto Rico, a 14 de agosto de 2007

Panel integrado por su Presidente, el Juez Arbona Lago, el Juez Salas Soler y la Juez Velázquez Cajigas

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Esta es la segunda ocasión que el trámite de la Querella Núm. 100030941, ante el Departamento de Asuntos del Consumidor (DACO) llega a nuestra consideración.

Los hechos centrales siguen siendo los mismos, por lo que copiamos aquí según expuestos en el KLRA-2006-00803:

*"[... .. ...]*

### SENTENCIA

*En San Juan, Puerto Rico, a 30 de enero de 2007.*

*El Sr. Xavier González Simounet y su esposa, la Sra. Leticia Meléndez y Estancias Reales, S.E. suscribieron un "Contrato de Compraventa Sobre Propiedad Horizontal" (el Contrato), fechado el 14 de junio de 2005, sobre el apartamento 164, modelo 14B4 del edificio 14 en el complejo residencial denominado Murano Luxury Apartments, sito en "Santa Rosa III, Guaynabo, Puerto Rico. El apartamento tiene un área de 2,122 pies cuadrados en su interior y participa de 0.4364 % en los elementos comunes del condominio al que pertenece. El precio pactado es de $499,000.00.*

*A la fecha del 14 de junio de 2005, los esposos González-Meléndez entregaron a Estancias Reales, S.E. la*

283

*suma de $15,000.00 en calidad de depósito para dicha compraventa.*

*En la parte aquí pertinente, el Contrato dispone:*

*[...]*

*20: Este contrato podrá ser sometido oportunamente a cualquier institución financiera en relación con la solicitud de préstamo hipotecario que hará el COMPRADOR. En el caso que la institución ante la cual se tramitará el préstamo hipotecario denegare el mismo, por causas imputables al COMPRADOR, o lo aprobase por una cantidad menor que la solicitada y el COMPRADOR no pudiese aportar la diferencia, podrá resolver el contrato en cuyo caso tendrá derecho a que se le devuelva cualquier suma por él depositada, de acuerdo al procedimiento establecido en el Reglamento, reteniendo la VENDEDORA la cantidad de $50.00 como pago total por gastos incurridos incluyendo la investigación de crédito y circunstancias personales del COMPRADOR, quedando relevados de sus obligaciones tanto el COMPRADOR como la VENDEDORA y sin más responsabilidad de las partes. [...] (Ap. pág. 47)*

*[...]*

*36. Mediante debida notificación a la VENDEDORA, el COMPRADOR, podrá resolver este contrato en cualesquiera de los siguientes casos:*

*a) ...*

*b) ...*

*c) ...*

*d) Si por fuerza mayor o caso fortuito no fuese posible cumplir con los términos del contrato. [...] (Ap. págs. 49-50)*

*37. Mediante debida notificación al COMPRADOR, la VENDEDORA podrá resolver este contrato en cualquiera de los siguientes casos:*

*a) Cuando el COMPRADOR no paga el pronto pago exigido en el término establecido en la cláusula 16 de este contrato a tal efecto.*

*b) Cuando el COMPRADOR, sin causa justificada, se niega a firmar o no concurre a la firma de la Escritura de Compraventa después de habérsele requerido para ello por la VENDEDORA por escrito en la forma y términos en que este contrato se señalen.*

*c) Si el COMPRADOR tardase más de diez (10) días en atender cualquier otro requerimiento que le hiciera la VENDEDORA por correo certificado y/o vía telecopiadora en relación ala tramitación de su préstamo hipotecario, salvo justa causa.*

*d) Cuando el COMPRADOR notifica por escrito a la VENDEDORA que no tiene interés en seguir con los trámites de compra de la unidad de vivienda.*

*e) Si por fuera mayor o caso fortuito no fuese posible cumplir con los términos del contrato.*

*38. En los casos de resolución de este contrato a que se refieren los incisos (a), (b), (c) y (d) de la cláusula*

*número 36 de este contrato se devolverán al COMPRADOR sus depósitos íntegramente. En los casos de resolución de este contrato por causas que se refieren a los incisos (a), (b), (c) y (d) de la cláusula número 37 de este contrato y en cualquier otro caso de resolución en que medie incumplimiento del COMPRADOR y no haya causa imputable a la VENDEDORA, ésta podrá deducir y retener de los pagos efectuados por el COMPRADOR sin necesidad de probar daños, la cantidad máxima de 2% del precio de compraventa como pago total por los gastos incurridos. Para la devolución de los depósitos por la VENDEDORA al COMPRADOR se dará estricto cumplimiento al procedimiento establecido en el Reglamento. [...] (Ap. pág. 50)*

*En o para el 9 de noviembre de 2005, Estancias Reales, S.E. comunicó por escrito a los esposos González-Meléndez, que el apartamento 164 estaba ya listo para la inspección y entrega, luego del otorgamiento de las correspondientes escrituras.*

*Los esposos González-Meléndez no acudieron a la inspección. Del récord consta que también fueron citados "formalmente [el] 11/16/05 y 11/22/05" y tampoco comparecieron. (Ap. pág. 54).*

*Así las cosas, el 12 de diciembre de 2005, los señores González-Meléndez notificaron por escrito a Estancias Reales, S.E. que no pueden proceder a ejecutar la compraventa pactada y pautada para el 21 de diciembre de 2005 (Ap. pág. 53), por razón de que "...la entidad bancaria que [ ] estaba trabajando [el préstamo hipotecario] [ ] finalmente no me lo pudo aprobar". (Ap. pág. 52).*

*El 12 de diciembre de 2005, Estancias Reales, S.E. cursó a los esposos González-Meléndez por correo certificado con acuse de recibo, la siguiente carta:*

*[...]*

*Acuso recibo de su fax con fecha de hoy 13 de diciembre de 2005 y respetuosamente le presento nuestra posición:*

*1) En junio 18 de 2005 (hace menos de 6 meses), usted firma contrato de compraventa y abona $15,000.00 de depósito.*

*2) En noviembre 9 de 2005 se le envía carta de 30 días según DACO.*

*3) Usted representó en todo momento que su compra sería en efectivo, razón por la cual usted nunca originó en institución bancaria alguna, nunca se tasó la propiedad y tampoco nos requirieron documentos en nombre suyo.*

*4) Se le citó formalmente (11/15/05 y 11/22/05) a realizar inspección y usted no compareció a ninguna.*

*5) Ayer, diciembre 12 de 2005, se le citó para otorgar Escritura Formal de Compraventa para el día 22 de diciembre de 2005 (citación 10 días, Cláusula 26).*

*Por ende y luego de consultar esta situación, determinamos que no existe la fuerza mayor a la que usted hacer referencia y procedemos a retener el 2% del precio de compraventa, según estipula el contrato en la Cláusula #38. Próximamente le enviaremos por correo el balance de su depósito. [...] (Ap. pág. 54)*

*Los esposos González-Meléndez no estuvieron de acuerdo, por lo que el 31 de enero de 2006 presentaron la Querella núm. 100030941, ante el Departamento de Asuntos del Consumidor (DACO). Solicitaron se ordenare a Estancias Reales, S.E. devolver la suma de $14,950.00, luego de deducir los $50.00 que dispone el Contrato. Justifican tal reclamo en:*

*[...]*

*16. La denegación del financiamiento por parte de la institución bancaria, no justifica la aplicación de la penalidad de 2% del precio de compraventa, y por lo tanto dicha penalidad es inaplicable a este caso. [...] (Ap. pág. 29).*

*[... .. ...]"*. (Ap. págs. 205-209).

Mediante la primera Resolución de DACO del 31 de agosto de 2006, el foro administrativo entendió y resolvió como sigue y según lo sintetizamos en la Sentencia del 30 de enero de 2007 en la ya mencionada causa KLRA200600803:

*"[...]*

*En el presente caso, la parte querellada notificó formalmente a la parte querellante, la firma de las escrituras de compraventa. La Parte Querellante presentó una carta de denegatoria de préstamo hipotecario que le fuera enviado por fax. **Dicho préstamo fue alegadamente solicitado a una institución con oficinas en el estado de California. No se presentó evidencia de que se hubiera realizado gestión alguna en la banca local o la razón por la cual se escogió dicha institución.** (Ap. pág. 65, énfasis nuestro)*

*[...]*

*La evidencia presentada por al Parte Querellante de que le fue denegado el préstamo hipotecario no nos convence. La misma carece de credibilidad. [...] (Ap. pág. 65).*

*Anteriormente en la Determinación de Hechos número 8 y 9 DACO concluyó que:*

*8. El 14 de diciembre de 2005, la Parte Querellante recibió vía facsímil, una comunicación de R.F. Mortgage, con sede en la ciudad de Ontario, California, indicándole que su solicitud de préstamo hipotecario convencional había sido denegado debido a "obligaciones excesivas y atrasos en las obligaciones de su crédito. [...] (Ap. pág. 62)*

*9. La parte Querellada no recibió solicitud de información sobre la propiedad objeto de esta querella, relacionados con el trámite de un préstamo hipotecario. (Ap. pág. 63)"*

(Ap., pág. 210).

En la ya citada causa KLRA-2006-00803, dictamos Sentencia el 30 de enero de 2007, en la que **revocamos** la Resolución del 31 de agosto de 2006 del DACO, **para ordenar la continuación del trámite administrativo.** Ello se debió, específicamente, a que la falta de credibilidad que entonces DACO otorgó a la prueba del Querellante, Sr. González Simounet, (Ap. págs. 211-214) quedó en gran medida amparada en una conclusión que a todas luces era equivocada, en cuanto y en tanto hacía referencia a que los Querellantes no realizaron gestión alguna para lograr el correspondiente préstamo hipotecario en la banca local, puesto que F.R. Mortgage está localizada en California, cuan en realidad está radicada en Puerto Rico.

A tal respecto, en el KLRA-2006-00803 resolvimos como sigue:

*"[... .. ...]*

*Exposición y Análisis*

Es de concluir que DACO no otorgó credibilidad alguna a la prueba del Querellante, encaminada a establecer que le cobija la protección de las cláusulas 20 y 36 (e) del Contrato de Compraventa sobre Propiedad Horizontal (Ap. pág. 47 y 49-50), que responden a lo dispuesto en el Artículo 10 de la Ley de la Oficina del Oficial de Construcción, Ley Núm. 130 del 13 de junio de 1967, según enmendada, 17 LPRA 510 (h) (3), por razón de que tal adquisición dependía del otorgamiento de un financiamiento a largo plazo (permanente) y éste no se logró.

Tal y como lo señala Estancias Reales, S.E. en su alegato, en por lo menos 3 ocasiones, el testimonio del recurrente expone que no sometió oportunamente ante R.F. Mortgage la solicitud para el financiamiento permanente del apartamento, que no pagó ni tampoco se verificó un estudio sobre su historial de crédito, así como también que R.F. Mortgage no solicitó copia del contrato de compraventa y tampoco requirió de Estancias Reales S.E. copia de planos ni permiso de uso etc. sobre el apartamento separado.

Por otro lado, el recurrente declaró que tenía intención de adquirir el inmueble con el producto de la venta de su residencia en la Urb. Montehiedra y en octubre de 2005 se enteró que la misma había sido gravada con embargo del Internal Revenue Service.

Tal situación evidenciaria no representa nada extraordinario ante un foro administrativo o judicial encargado de administrar justicia. Por el contrario, podemos decir que se trata de algo cotidiano, necesario resolver en la totalidad de la prueba y la credibilidad que ella merece, aquilatando también la forma y manera en que se comportó el testigo (demeanor).

**No obstante, nos resulta preocupante que el foro administrativo también expuso, como fundamento para arribar a la conclusión de que el trámite de financiamiento ante F.R. Mortgage no fue bona fide, que "Dicho préstamo fue alegadamente solicitado a una institución con oficinas en el estado de California. No se presentó evidencia de que se hubiera realizado gestión alguna en la banca local o la razón por la cual se escogió dicha institución.".**

**No se disputa en autos que tal conclusión es equivocada, puesto que es un hecho cierto que F.R. Mortgage tiene oficinas en San Juan, Puerto Rico. (Ap. pág. 58). Ello también lo acepta Estancias Reales, S. E. (Alegato, pág. 7).**

**Quien tiene oficinas en Ontario, California es "Informative Research", "nombre de la agencia" de crédito a que hizo referencia F.R. Mortgage en su "Informe Sobre Denegación de Crédito, Terminación o Cambio". (Ap. pág. 56).**

**No obstante, en la medida de que tal dato equivocado ("...institución [bancaria] con oficina en el estado de California...", que "[n]o se presentó evidencia de que se hubiera realizado gestión alguna en la banca local..." "...o la razón por la cual se escogió dicha institución."), no se puede considerar como mero error mecanográfico, incidió en el proceso decisorio sobre credibilidad. De igual forma, no podemos concluir que por su contenido tal conclusión resultó ser inofensiva y no perjudicial, por lo que nos resulta forzoso revocar un dictamen fundamentado en credibilidad. No estamos ante el error inocuo que no implica revocación. Cf. Pueblo v. Mangual, 111 DPR 136, 145 (1981). Estancias Reales, S.E. no ha demostrado que se trató de un error inconsecuente en el dictamen. Cf. Pueblo v. Pellot Pérez, 121 DPR 791, 803 (1988).**

**Ante los hechos particulares que informan esta causa, también debemos disponer que el proceso regrese al foro adjudicativo del DACO, para que luego de reevaluada toda la prueba y tomando en consideración que F. R. Mortgage es una empresa financiera con oficina en San Juan de P.R. y que "Informative**

*Research" es quien tiene oficinas en Ontario, California, se adjudique la causa según proceda."* (Énfasis suplido)

De regreso al foro administrativo y conforme al mandato, DACO reabrió el trámite de la Querella y luego de cursar *"Orden para que la parte Querellante mostrare causa por la cual no se deba emitir una Resolución ordenando la devolución a la Parte Querellante de la totalidad del depósito... menos ...cincuenta dólares..."* y recibir de parte de Estancias Reales S.E. *"Moción en Cumplimiento de Orden Para Mostrar Causa"* el 9 de mayo de 2007 (Ap. págs. 217-227), DACO dictó, y notificó nueva Resolución el 19 de junio de 2007, prácticamente repitiendo el texto de la anterior ▓ (del 31 de agosto de 2006, Ap. págs. 81-87), salvo para añadir, como nuevo párrafo 9 en la página 4, nueva Conclusión y Orden lo siguiente:

*"[... .. ...]*

*9. Durante la vista administrativa no se presentó prueba que fuera tendente a establecer que la denegación del préstamo solicitado por la Parte Querellante fuera obtenida de forma dolosa o irregular. [... .. ...].* (Ap. pág. 231)

*[... .. ...]*

*En el presente caso, la Parte Querellante le solicitó a la parte querellante, la cancelación del contrato de compraventa. La Parte Querellante presentó una carta de denegatoria de préstamo hipotecario que le fuera enviado por fax. Dicho préstamo fue alegadamente solicitado a una institución con oficinas en el estado de California (sic). No se presentó evidencia de que dicha denegatoria fuera obtenida en forma dolosa o irregular. Estando la causa utilizada por la Parte Querellante para cancelar el contrato expresamente dispuesta por la Ley y su Reglamento, procede decretar con lugar la querella y conceder el remedio solicitado.*

*Por todo lo antes expuesto, este Departamento, en virtud de las facultades conferidas por la Ley Núm. 5 de 23 de abril de 1973, según enmendada, emite la siguiente:*

*ORDEN*

*Dentro del plazo de treinta (30) días a partir de la fecha de notificación de la presente resolución, la querellada Estancias Reales, S.E., pagará a la parte querellante, Xavier González Simounet y Leticia Meléndez, la suma de $14,950.00 más el interés legal en caso de incumplir con el término concedido. [... .. ...]"*.

(Ap. pág. 233) (Énfasis en el original)

Hemos reestudiado el asunto en controversia, que en esencia se reduce a determinar si el apartamento 164, modelo 14B4 del edificio 14 en Murano Luxury Apartments, separado por el matrimonio González – Meléndez con la suma de $15,000.00, no fue finalmente adquirido mediante compraventa debido a que dicho matrimonio no logró en forma *bona fide* obtener su financiamiento de una entidad financiera viable en Puerto Rico.

De entrada, debemos aclara que en esta etapa del proceso concluimos, como cuestión de hecho, que R.F. Mortgage es una entidad bancaria-hipotecaria con operaciones en Puerto Rico (no en Ontario, California) y que la agencia de crédito relacionada en el proceso, de nombre *"Informative Research"*, es la que tiene oficinas en Ontario, California. Como ya señalamos, a tal respecto no existe diferencia alguna entre el matrimonio González-Meléndez y sólo se trata de una inadvertencia de redacción de DACO, luego de lo resuelto en el KLRA-2006-00803.

La aquí recurrente no disputa que en o para la fecha de la compraventa relacionada, los esposos González-Meléndez fueran objeto de un embargo por parte del *"Internal Revenue Service"*. Por otro lado, luego de aclarado en el trámite KLRA-2006-00803 que R.F. Mortgage cuenta con presencia local, así como que dichos esposos primero planificaron adquirir el apartamento con el producto de la venta de la residencia embargada y luego con dicho financiamiento, cuenta con amplia base en el récord administrativo la conclusión del 19 de junio de 2007, aquí recurrida, y la Orden para la devolución de los $14,950.00 del depósito.

Como se sabe, cuando una conclusión del foro administrativo cuenta con base suficiente en el récord, aunque el foro judicial revisor opine que también cabría otra interpretación, no está autorizado en variar el dictamen. *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 DPR 543, 552-553 (1993).

Conforme a lo expuesto, debemos confirmar el dictamen administrativo.

**Dictamen**

Confirmamos la Resolución del DACO dictada y notificada el 19 de junio de 2007 en la Querella Núm. 100030941, del epígrafe.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones